UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| BRANDON LEE SMITH,<br><br>                              Petitioner,<br><br>v.<br><br>HAROLD W. CLARKE,<br><br>                              Respondent. | Civil Action No. 3:13-CV-613 |

## MEMORANDUM OPINION

THIS MATTER is before the Court on a Writ of Habeas Corpus for Prisoner in State Custody ("Petition") (ECF No. 1) filed by Petitioner Brandon Lee Smith ("Smith") and a Motion to Dismiss (ECF No. 4) filed by Respondent Harold W. Clarke ("Clarke"), Director of the Virginia Department of Corrections. In the Petition, Smith challenges his 2009 convictions for first degree murder and use of a firearm in the commission of murder. After being convicted, Smith was sentenced to thirty-five years on the murder conviction and three consecutive years on the firearm offense. For the reasons that follow, the Petition is DENIED and the Motion is GRANTED.

### I.   BACKGROUND

#### A. FACTUAL HISTORY

On January 12, 2008, Smith entered the Mi Casa restaurant with several friends. An event was being held at the restaurant, for which payment of a cover charge was required. While there, he argued with one of the restaurant's managers, Sonny Odum, and was asked to leave the premises. One of the restaurant security personnel, Kynn Garrison, searched Smith, failed to find a weapon, and escorted Smith from the building. At trial, testimony was adduced indicating that Smith was put in a choke hold and lost consciousness while being escorted away from the restaurant. Several witnesses also testified that upon regaining consciousness, Smith stated an

1

intention to return to the restaurant.

In fact, Smith did return to the restaurant approximately five minutes later, accompanied by several friends and carrying a firearm. A fight quickly broke out between Smith, his friends, and the restaurant's bouncers. The victim, Dasan Richardson, who was also employed as security personnel at the restaurant, was present on the scene and intervened in the fight. Richardson pushed his way into the crowd, knocking down Smith and several other people in the crowd. Smith testified at trial that he was being kicked and hit while lying on the ground, and that he wanted the beating to stop. From his position on the ground, Smith pulled the trigger of the gun he was carrying twice, but testified that he did so without the intention of hitting any person. One of the shots fired by Smith hit Richardson, who later died of the injury. Sonny Odum saw Smith put away the gun as he fled from the scene.

At trial, testimony was adduced indicating that Smith's lip and eye were swollen as he fled the scene of the shooting. The prosecution also offered the testimony of three of Smith's fellow inmates. These witnesses testified that Smith had made various comments on the shooting while housed with them. These comments included statements that Smith "just got caught up in the moment," (Trial Tr. vol. 2, 112, Apr. 15, 2009), did not intend to shoot Richardson, retrieved the firearm from his car after being initially escorted from the restaurant, and returned to the restaurant to save face.

**B. PROCEDURAL HISTORY**

*1. Conviction and Direct Appeal*

A jury trial was held before the Honorable Gordon F. Willis on April 14, 15, and 16, 2009. Attorneys Stuart C. Sullivan ("Sullivan") and Carolyn S. Seklii represented Smith at trial. The jury found Smith guilty of first degree murder and use of a firearm in the commission of murder, and it recommended a sentence of 38 years. The trial court then imposed the full jury sentence with no time suspended. Smith made petitions for direct appeal to the Virginia Court of Appeals, which were denied on April 21, 2009 and July 1, 2009, and a petition to the Supreme Court of

Virginia, which was denied on January 1, 2011.

### 2. State and Federal Habeas Petitions

On January 3, 2012, Smith filed a writ of habeas corpus in the Circuit Court for the City of Fredericksburg ("Fredericksburg Circuit Court"). He alleged constitutional violations, specifically arguing that his trial counsel was constitutionally deficient: (1) in failing to object to, or seek mistrial for, various argumentative questions and comments posed by the prosecution, and (2) in failing to fully advise Smith on the benefits of accepting a plea agreement rather than going to trial. Clarke filed a motion to dismiss, and after oral argument, the Fredericksburg Circuit Court dismissed Smith's state habeas petition. Smith properly appealed this decision to the Supreme Court of Virginia, and on June 13, 2013, the Supreme Court of Virginia denied Smith's petition for appeal.

On September 10, 2013, Smith filed the Petition in this Court raising the same two claims as were raised in his state habeas petition before the Fredericksburg Circuit Court. On October 10, 2013, Clarke filed a response to the Petition and the Motion to Dismiss. Smith filed a response in opposition to the Motion to Dismiss on November 1, 2013. This matter is now ripe for review.

## II. LEGAL STANDARDS

### A. THE AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may review a petition for a writ of habeas corpus by a person serving a sentence imposed by a state court only on grounds that the person is being held in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The federal court may grant the petition on a claim decided on its merits by the state court only if that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A decision is "contrary to" federal law if it resolves a question of law in a way that contradicts the relevant Supreme Court precedent, or if it yields a result that differs from the outcome of a Supreme Court case involving "materially indistinguishable" facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A decision applies federal law unreasonably if it is based on the correct legal principle but applies that principle unreasonably to the facts of a case. *Id.* at 413. Whether a decision is reasonable is determined by an objective, not subjective, test. *Id.* at 409–10. The question is not "whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). Finally, a federal court is to presume the correctness of the state court's finding of facts and not find an "unreasonable determination" of the facts, unless the petitioner rebuts the presumption by clear and convincing evidence. *Id.* Thus, under section 2254(d), if a state court applies the correct legal rule to the facts of a case in a reasonable way, or makes factual findings reasonably based on the evidence presented, a federal court does not have the power to grant a writ of habeas corpus, even if the federal court would have applied the rule differently. *Williams*, 529 U.S. at 406–08.

### B. MOTION TO DISMISS

The familiar standards of Federal Rule of Civil Procedure 12(b)(6) apply to a government's motion to dismiss a section 2254 petition. *Walker v. Kelly*, 589 F.3d 127, 138 (4th Cir. 2009). A motion to dismiss therefore "tests the legal sufficiency of the petition, requiring the federal habeas court to assume all facts pleaded by the § 2254 petitioner to be true." *Id.* at 139 (internal quotation marks omitted) (quoting *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009)). The court must consider "the face of the petition and any attached exhibits" in determining whether a section 2254 petition states a claim for relief. *Id.* (quoting *Wolfe*, 565

4

F.3d at 169).

To survive a motion to dismiss, a complaint must contain sufficient factual information "to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009). A complaint achieves facial plausibility when it contains sufficient factual allegations supporting the reasonable inference that the alleged violations occurred. *See Twombly*, 550 U.S. at 556; *see also Iqbal*, 556 U.S. at 678.

### III. DISCUSSION[1]

#### A. CLAIM I – FAILURE OF TRIAL COUNSEL TO OBJECT AND/OR MOVE FOR MISTRIAL

For the reasons that follow, the Court finds that Claim I fails as a matter of law. Accordingly, the Motion to Dismiss is GRANTED with respect to Claim I.

##### 1. *Parties' Arguments*[2]

In the Petition, Smith contends that he was denied the effective assistance of counsel in violation of the Constitution for his trial counsel's failure to object to, or request a mistrial for, various questions posed to Smith by the prosecution on cross-examination. Specifically, Smith argues that the prosecution posed eleven "were-they-lying" questions to Smith on cross-examination, and posed two additional questions that were prejudicial and inappropriate. Smith argues that these questions were particularly prejudicial, and therefore his counsel's conduct

---

[1] Smith contends, and Clarke does not dispute, that the Petition's claims have been exhausted and that the Petition was timely filed. See 28 U.S.C. §§ 2244(d), 2254(b)(1)(A).

[2] The Parties apparently dispute which facts the Court should credit in considering the Petition and Motion to Dismiss. In the Motion to Dismiss, Clarke quotes, in whole, the factual summary written by the Virginia Court of Appeals on direct appeal. Smith correctly notes that these facts were utilized in considering the sufficiency of the evidence against Smith and, therefore, all disputed facts were viewed by the Court of Appeals in the light most favorable to the prosecution. *See Higginbotham v. Commonwealth*, 218 S.E.2d 534, 537 (Va. 1975). The Court need resolve this apparent dispute between the Parties regarding which facts should be cited or accepted. Rather than rely on the factual summaries of either Party, the Court has summarized the facts on the basis of the trial transcripts and has noted factual disputes where appropriate.

was particularly deficient, because the outcome of the trial turned on whether the jury accepted Smith's testimony with regard to his state of mind and intent in shooting the firearm.

As to the "were-they-lying" questions, Smith points out that the prosecution repeatedly asked Smith whether other trial witnesses, who gave testimony inconsistent with Smith's, had perjured themselves. Smith argues, without citation to authority, that such questions are constitutionally impermissible and unauthorized under Virginia law. He asserts that such questions invade the province of the jury to make credibility determinations and prevented Smith from explaining the reasons that his testimony differed from that of other witnesses.

As to the additional questions, Smith argues that the prosecution's characterization of the firearm as a "murder weapon" was unduly prejudicial and argumentative, effectively denying Smith of due process of law. Smith characterizes the prosecution's question as testimony, rather than examination, and asserts that it constituted prejudicial "*witness bashing*." (Pet. 16.) He argues that his trial counsel's failure to object in any of the thirteen enumerated situations created cumulative prejudice and was constitutionally deficient. He (incorrectly) argues that relief is warranted if this Court finds that a reasonable probability exists that the trial's outcome would have been different in the absence of his counsel's purported errors.

In the Motion to Dismiss, Clarke argues that a reasonable attorney may have affirmatively chosen not to object to the disputed questions, and that the *Strickland* standard was not developed to "promote judicial second-guessing on questions of strategy." *Sallie v. North Carolina*, 587 F.2d 636, 640 (4th Cir. 1978). Further, even assuming that Smith could prove his counsel's performance was constitutionally deficient, Clarke argues that Smith has failed to show prejudice. Clarke argues that Smith's testimony was rife with "obvious and flagrant untruths" making his claim of prejudice meritless. (Mem. Supp. Mot. Dismiss 6.) Clarke argues that both the discrepancies noted by the prosecution and Smith's concessions that he had asked others to lie on his behalf destroyed his credibility. Accordingly, Clarke argues that Smith's Petition for habeas relief fails as a matter of law as to Claim I.

6

In response to the Motion to Dismiss, Smith argues that a single objection from his trial counsel would have prevented the prosecution from posing additional argumentative and prejudicial questions on cross-examination. Following this reasoning, Smith contends that while each question was prejudicial, the cumulative effect of all thirteen disputed questions was highly prejudicial, particularly in light of the fact that Smith's credibility was crucial to the only available defense to the charges. Smith argues that this extreme prejudice was caused by trial counsel's failure to object even once. Further, Smith argues that such a failure could not have been a tactical decision because correct objections would not have drawn attention to anything other than the improper nature of the prosecution's question.

### 2. *Analysis*

Smith has alleged that his counsel was constitutionally deficient for failing to object to a series of questions posed to him by the prosecution on cross-examination. However, Smith has failed to demonstrate that the Fredericksburg Circuit Court's denial of collateral relief involved an unreasonable determination of facts, or that the denial of collateral relief was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, the Court finds that Claim I fails as a matter of law.

As an initial matter, Smith's Petition before this Court is virtually identical to his petition for habeas relief before the Fredericksburg Circuit Court. For this reason alone, Smith has not shown that the state court made an unreasonable determination of facts. Pursuant to 28 U.S.C. § 2254, this Court must presume the correctness of the state court's factual findings. *See* 28 U.S.C. § 2254(e)(1); *Schriro,* 550 U.S. at 473–74. A petitioner can only rebut this presumption of correctness with clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). However, there are no facts, evidence, or argument in the record that differ from those before the Fredericksburg Circuit Court in resolving Claim I. Accordingly, the Court finds that Smith has not presented clear and convincing evidence that the Fredericksburg Circuit Court's denial of habeas relief involved an unreasonable determination of facts.

Smith similarly has not shown an unreasonable application of clearly established federal law. To succeed on a claim of ineffective assistance of counsel, a petitioner must show both that: (1) his attorney's performance fell below an objective standard of reasonableness, and (2) he suffered actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong of *Strickland*, the performance prong, requires the petitioner to "'show that counsel's representation fell below an objective standard of reasonableness' measured by 'prevailing professional norms.'" *Lewis v. Wheeler*, 609 F.3d 291, 301 (4th Cir. 2010) (quoting *Strickland*, 466 U.S. at 688). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. When making an ineffective assistance of counsel determination, a court must consider "the practical limitations and tactical decisions that counsel faced." *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). The second prong of *Strickland*, the prejudice prong, requires the petitioner to show that counsel's errors were serious enough to deprive the petitioner of a fair trial. *Strickland*, 466 U.S. at 687. In essence, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. If it is clear the petitioner has failed to satisfy either prong of the *Strickland* standard, a court need not inquire into whether he satisfied the other. *Id.* at 697.

After briefing and oral argument, the Fredericksburg Circuit Court concluded that Smith's attorney "did not display deficient performance in not objecting to certain questions asked on cross-examination of the petitioner," and that Smith had "not shown that he was prejudiced by any of the alleged acts or omissions of his attorney." (Cir. Ct. O. of Nov. 13, 2012, at 2, ECF No. 5, Ex. 7.) The Court noted its familiarity with the case, as Judge Willis presided over Smith's trial and "witnessed firsthand" Sullivan's professional representation. (Mot. Hr'g Tr. 28:1–9, Nov. 13, 2012.) The Court also noted the "strong presumption that defense counsel's

conduct is within the range of professional assistance." (*Id.* at 28:17–21.) But, even if counsel had failed to properly object, Judge Willis noted that Smith failed to demonstrate any resulting prejudice because Smith's testimony was "contrary to a multiplicity of witnesses . . . ." (*Id.* at 29:1.) The trial transcripts amply confirm that the Fredericksburg Circuit Court reasonably reached this conclusion through proper application of the *Strickland* standard.

With regard to the performance prong of *Strickland*, the trial transcript supports the reasonable conclusion that Smith's counsel made a strategic choice to rehabilitate Smith after cross-examination had concluded, rather than to object, piecemeal, to each of the prosecution's "were-they-lying" questions. The prosecution's cross-examination of Smith was relatively brief, and each of the allegedly objectionable questions occurred within a short period of time. (Trial Tr. vol. 2, 222-35, Apr. 15, 2009.) After this cross-examination concluded, Smith's counsel posed various questions on redirect, and each of these questions sought to rehabilitate Smith's credibility by addressing the consistencies between Smith's testimony and that of the other trial witnesses. (*Id.* at 236–41.) Smith concedes that his credibility was a crucial issue at trial, and his counsel could reasonably have concluded that frequent objections on cross-examination could have negatively impacted the jury's assessment of Smith's credibility—or at least his willingness to submit to examination. Similarly, Smith's counsel could reasonably have concluded that rehabilitation on redirect examination was tactically preferable to objecting to the prosecution's cross-examination.

To both the Fredericksburg Circuit Court and to this Court, Smith offered no citation to authority and nothing more than a conclusory assertion that his counsel's decision to rehabilitate rather than object constituted deficient performance. On these facts and in light of record before the state court, Smith has not met his burden to show that the state court unreasonably applied the first prong of the *Strickland* standard in denying habeas relief.

With regard to the prejudice prong of *Strickland*, Smith has failed to demonstrate that the state court unreasonably applied the law. There is nothing in the record to show that Smith's

9

rehabilitation was unsuccessful. Further, the record clearly reveals that Smith's testimony was irreconcilable with that of at least four other witnesses who claimed to have heard Smith indicate that he would return to the restaurant. (Trial Tr. vol. 1, 157, 204, 219, 239, Apr. 14, 2009.) Even if the disputed questions had not been posed on cross-examination, or if Smith's counsel had objected, the jury would have been required to resolve this and other factual disputes. Smith presented to the state court nothing more than a conclusory assertion that, but for his counsel's failure to object, the outcome of the trial would have been different. In light of the weight of the witness testimony undermining Smith's account, and the additional inculpatory evidence not implicated by the disputed cross-examination, the state court was not unreasonable in applying the second prong of the *Strickland* standard to conclude that Smith was not prejudiced by his counsel's failure to object.[3]

A defendant's chances of acquittal will often involve a credibility dispute and hinge on the jury's assessment of his state of mind. However, even when a credibility determination is dispositive, counsel's failure to protect the defendant from impeachment does not necessarily equate to ineffective assistance of counsel. The Fredericksburg Circuit Court reasonably applied the *Strickland* standard to conclude that Smith was not deprived of the effective assistance of counsel with regard to Claim I. Accordingly, the Court finds that Claim I fails as a matter of law and grants the Motion to Dismiss as to Claim I.

### B. CLAIM II – FAILURE OF TRIAL COUNSEL TO FULLY COUNSEL SMITH ON PLEA OFFER

For the reasons that follow, the Court finds that Claim II fails as a matter of law and accordingly GRANTS the Motion to Dismiss as to Claim II.

#### *1. Parties' Arguments*

---

[3] In Virginia, the trial court exercises its discretion to determine whether a mistrial is warranted, and "[w]hether improper evidence is so prejudicial as to require a mistrial is a question of fact to be resolved by the trial court in each particular case." *Beavers v. Commonwealth*, 427 S.E.2d 411, 420 (Va. 1993), *cert. denied*, 510 U.S. 859, 126 L. Ed. 2d 130, 114 S. Ct. 171 (1993). Because the Fredericksburg Circuit Court reasonably determined that Smith was not prejudiced by his counsel's conduct, it follows that the trial court likely would have denied a request for mistrial on the same basis. Accordingly, the Fredericksburg Circuit Court's denial of habeas relief on the grounds that Smith's counsel failed to move for a mistrial was not an unreasonable determination.

In the Petition, Smith contends that he was denied the effective assistance of counsel in violation of the Constitution for his trial counsel's failure to properly advise him with regard to a plea agreement, which Smith ultimately rejected in favor of trial. Smith concedes that his attorney informed him that the prosecution had offered a plea agreement, under which Smith would plead guilty to second degree murder and face a sentence of fourteen to twenty-three years. However, Smith argues that his counsel's advice was constitutionally deficient in two respects. First, Smith alleges that his trial counsel failed to explain that he could not be acquitted at trial and, at best, would face a sentence exposure of up to fifteen years for convictions of manslaughter and possession of a firearm. Second, Smith alleges that his trial counsel failed to explain that the evidence at trial (including Smith's own testimony that he started the fight and intentionally fired the gun) made conviction on manslaughter charges highly unlikely. Smith contends that he would have accepted the plea agreement if he had been advised of these two facts.

In the Motion to Dismiss, Clarke argues "upon information and belief," (Cir. Ct. Mot. Dismiss 5), that Smith's trial counsel negotiated the plea agreement with the prosecution and, therefore "it is hard to believe that the attorney did not encourage Smith to accept the plea." (Mem. Supp. Mot. Dismiss 8). Clarke further argues that the cases cited in the Petition all involved situations in which attorneys affirmatively misrepresented a criminal defendant's sentence exposure or failed entirely to discuss the advisability of accepting the plea agreement. Clarke notes that "[h]ere, there is no such admission from the attorney." (*Id.*) Clarke argues that the Fredericksburg Circuit Court made a factual finding that Smith was properly advised and knowingly rejected the plea agreement. He argues that this Court must presume these facts to be correct and, therefore, Claim II fails as a matter of law.

In response, Smith asserts that both Clarke and the Fredericksburg Circuit Court missed the point of the Petition by relying solely on the fact that Smith knew of, and rejected, the plea agreement. Smith reiterates that his trial counsel failed to go beyond informing Smith of the

11

agreement's existence and making a bare recommendation; he reiterates that trial counsel failed to advise him that he could not be acquitted at trial and would face up to fifteen years' imprisonment at best. Accordingly, Smith argues that the Motion to Dismiss should be denied and the plea agreement should be reinstated as originally offered. *See Lafler v. Cooper*, 132 S. Ct. 1376 (2012).

### 2. Analysis

A defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. *Lafler*, 132 S. Ct. at 1384. Thus, it follows that the *Strickland* ineffective assistance of counsel also applies in this context. *Id.* (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). To establish the prejudice prong, "a defendant must show that the outcome of the plea process would have been different with competent advice." *Id.* In other words, if a defendant chose to forgo the plea offer and proceed to trial, he "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court . . ., that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 1385. However, before reaching the issue of prejudice, the court must first decide whether counsel's performance fell below the "objective standard of reasonableness." *Strickland*, 466 U.S. at 687.

In *Libretti v. United States*, 516 U.S. 29, 50 (1995), the Supreme Court noted that "it is the responsibility of defense counsel to inform a defendant of the advantages and disadvantages of a plea agreement . . . ." The American Bar Association's standards provide guidelines concerning the proper relationship between defense counsel and his client in the plea agreement context:

> (a) Defense counsel should conclude a plea agreement only with the consent of the defendant, and should ensure that the decision whether to enter a plea of guilty or nolo contendere is ultimately made by the defendant.
> (b) To aid the defendant in reaching a decision, defense counsel, after appropriate investigation, should advise the client of the alternatives available

>and of considerations deemed important by defense counsel or the defendant in reaching a decision.

American Bar Association Standards for Criminal Justice, Standard 14-3.2; *see also* American Bar Association Standards for Criminal Justice, Standard 4-5.1 ("[D]efense counsel should advise the accused with complete candor concerning all aspects of the case, including a candid estimate of the probable outcome.") Accordingly, counsel should first notify his client when he receives a plea offer. Then counsel should advise his client concerning the available alternative of proceeding with trial, and present an opinion concerning the probable outcomes of both the guilt and sentencing phases. *See Jones v. Murray*, 947 F.2d 1106, 1110–11 (4th Cir. 1991) (finding that counsel provided effective assistance by advising his client of the strengths and weaknesses of the Commonwealth's case against him, and presenting an opinion about the guilt and sentencing phases of trial); *Carillo-Morales v. U.S.*, 952 F.Supp.2d 797, 804 (E.D. Va. 2013) (citation omitted)("[A] criminal defense attorney is required to communicate a formal plea offer, provide all relevant facts, and discuss all potential alternatives . . . .").

With the foregoing in mind, the Court finds that Claim II fails as a matter of law. First, the parties do not dispute the existence of a plea offer that was brought to the attention of Smith. Smith was informed of the terms of this offer and his right to accept or reject the offer as indicated by his exercise of the latter option. Additionally, at his arraignment, Smith told the Court that he had discussed the elements of murder with his attorney and understood what the Commonwealth had to prove.

Furthermore, based on the witnesses who testified at the trial as well as the circumstances leading up to the murder, the Court finds that it is not unreasonable to believe that Smith would have been motivated to seek a plea agreement. Several witnesses at trial testified that Smith stated an intention to return to the restaurant. And, in fact, Smith did return to the restaurant approximately five minutes later, accompanied by several friends and carrying a firearm. Smith freely admitted that after the fight broke out, and while he was lying on the

ground, he pulled the trigger of the gun he was carrying twice. Accordingly, based on the testimony adduced at trial, this Court finds that Smith would have been inclined to seek a plea agreement in an attempt to avoid the ultimate outcome of the jury trial.

Finally, this Court shall give deference to the trial court's factual findings. *See Schriro*, 550 U.S. at 473. Judge Willis presided over both Smith's trial and state habeas petition. He had the best opportunity to view both Smith and his counsel's demeanor during the plea colloquy. Judge Willis subsequently made a factual finding that Smith's counsel properly advised him about a plea offer and that Smith voluntarily and knowingly chose to reject that offer. By giving the requisite deference to Judge Willis' factual findings, the Court finds that Claim II fails as a matter of law and thus grants the Motion to Dismiss on Claim II.

### C. REQUEST FOR AN EVIDENTIARY HEARING

For the reasons that follow, the Court DENIES Petitioner's request for an evidentiary hearing.

#### 1. Parties' Arguments

Smith requests an evidentiary hearing on Claim II because he alleges there is a clear dispute regarding a material fact, specifically whether counsel provided sufficient advice as to the plea agreement. Smith argues that this issue can only be resolved through an evidentiary hearing. Clarke argues an evidentiary hearing is unnecessary because *Cullen v. Pinholster*, 131 S. Ct. 1388, 1401 (2011), limits this Court's ability to consider new evidence.

#### 2. Applicable Law

The decision to grant an evidentiary hearing is left to the "sound discretion of district courts." *Schriro*, 550 U.S. at 473. A federal court must consider whether the evidentiary hearing would provide the petitioner the opportunity to "prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474; *see Mayes v. Gibson*, 210 F.3d 1284, 1287 (10th Cir. 2000). The court must also consider the standards prescribed by

section 2254 when considering whether an evidentiary hearing is appropriate. *Schriro*, 550 U.S. at 474.

"Although state prisoners may sometimes submit new evidence in federal court, the AEDPA's statutory scheme is designed to strongly discourage them from doing so." *Cullen*, 131 S. Ct. at 1401. In *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), the Supreme Court reversed the Ninth Circuit after it granted habeas relief under § 2254(d)(1) based on a record that had been expanded at a federal evidentiary hearing. The Supreme Court held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* at 1398. The Court emphasized that the "backward-looking language [of the statute] requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court." *Id.*

The Court then explained how this understanding impacted a federal habeas court's assessment of whether an evidentiary hearing is appropriate. The Court stated that "when the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'" *Id.* at 1399 (quoting *Schriro*, 550 U.S. at 474). Indeed, the Court indicated that conducting an evidentiary hearing would be useless for claims rejected on the merits by the state courts. *Id.* at 1400 ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court.").

### 3. Analysis

Smith requests an evidentiary hearing on Claim II. Clarke argues that a hearing is unnecessary because all issues can be decided by a review of the record alone. As described in detail above, the Court finds that based on a thorough evaluation of the state court record, habeas relief under section 2254 is precluded, and thus the request for an evidentiary hearing is DENIED.

**D. CERTIFICATE OF APPEALABILITY**

A district court that enters a final order denying a § 2254 motion must grant or deny a certificate of appealability. Rules Governing Section 2254 Proceedings 11. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Miller-El*, 537 U.S. at 336–38 (citing *Slack*, 529 U.S. at 484). For the reasons stated more fully above, no law or evidence suggests Smith is entitled to further consideration of his claims. Accordingly, the Court DENIES a certificate of appealability.

## IV. CONCLUSION

For the reasons stated above, the Court DENIES Petitioner's § 2254 Motion and the Request for Evidentiary Hearing, and GRANTS Respondent's Motion to Dismiss. The Court also DENIES a Certificate of Appealability.

Let the Clerk send a copy of this Memorandum Opinion to Petitioner and all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this   23rd   day of September 2014.